UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

MICHAEL MELENDEZ,

        Petitioner,

vs.

BRIAN FISCHER, Commissioner, and
JAMES BERBARY, Superintendent,

        Respondents,
_____

DECISION AND ORDER
13-CV-6231 CJS

## INTRODUCTION

**Siragusa, J.** Before the Court is the petition of Michael Melendez, filed on May 2, 2013, ECF No. 1, originally pursuant to 28 U.S.C. § 2241, but characterized by the Court, after notice, as an application under 28 U.S.C. § 2254. Respondents Brian Fischer and James Berbary have filed a response, ECF No. 9, and the matter is ready for decision. For the reasons stated below, the petition is denied.

## BACKGROUND

Petitioner is an inmate at Woodbourne Correctional Facility in New York State. He is serving a sentence for a state murder conviction. During a cell search, a correctional officer discovered a half-full plastic bottle of what appeared to be a pinkish colored liquid, which he identified, by smelling it, as an alcoholic beverage. Petitioner was charged with a violation of the facility rules for possessing an alcoholic beverage and appeared at a Tier III disciplinary hearing. In his petition, he claims that he was denied his due process rights to employee assistance in defense of the charge, and to present

documentary evidence. He seeks expungement of the disciplinary determination from his record, and restoration of his good time credits.

Petitioner claims that the employee assistant provided to him reported, after thirty minutes, that there were no documents available. At the Tier III hearing, however, the hearing officer showed Petitioner an alcohol verification memorandum, and the officer told Petitioner that, although he could review the document, he was not permitted to obtain a copy of it. Further, Petitioner requested that the hearing officer provide him with a copy of Directive # 4910 from the Department of Corrections and Community Services ("DOCCS"). The officer denied the request, stating that it was irrelevant since Petitioner was not being disciplined for contraband.[1] After being found guilty of violating a correctional facility rule, Petitioner was given a copy of the alcohol verification memo, Directive 4910 and the employee assistance form, which he attached to his Petition. The alcohol verification memorandum, dated June 1, 2009, from "Sgt. Foley," states:

> Based on my experience as a 24 year Correctional Personnel I determined that the 16 ounces of liquid found by CO Karlshom was indeed a fermented alcoholic beverage. The odor was the main factor in this determination. I've been a Sgt. for 6 years.

Pet'n Ex. C (Foley memorandum, Jun 1, 2009, ECF No. 1 (pdf page 21 of 36)). Also attached to the Petition is a message dated March 29, 1996, at 2:17 PM discussing the methods to be used to verify that a liquid contains alcohol. Pet'n Ex. C (Message, Mar. 29, 1996, ECF No. 1 (pdf page 22 of 36)). In essence, the message requires that the determination be made by a "sergeant or higher authority," and that after the determination, "the supervisor should prepare a memorandum to be attached to the misbehavior

---

[1] The directive evidently pertains to control of and search for contraband. *See Smith v. Taylor*, 503 F.Supp.2d 538, 542 (N.D.N.Y. 2006) (discussing Directive 4910), *rev'd* on other grounds, 217 Fed. Appx. 97 (2d Cir. 2007).

2

report which indicates that based upon his/her experience and circumstances under which the substance was found, he/she believes that the substance is, or is intended to be, homemade alcohol. The substance can then be destroyed." *Id*. This information is essentially repeated in Directive 4910 at paragraph 4. *See* Pet'n Ex. C, (No. 4910, Control of and Search for Contraband, at 15, ECF No. 1 (pdf page 25 of 36)). The Assistant Form, Pet'n Ex. D, Jun. 1, 2009, ECF No. 1 (pdf page 28 of 36), shows that "M. Rankin" was the employee assistant, that he met with Petitioner on June 4, 2009, who requested S. Moore, a fellow inmate, and Sgt. Foley and J. Karlstrom be interviewed as a potential witnesses, and that he be provided with "[d]ocuments pertaining to the verification that the liquid in question was in fact alcohol and the testing medium." *Id*.

At the hearing, which was conducted on June 10, 2009, Pet'n Ex. E, ECF No. 1, Petitioner points out that Sergeant Foley testified that the liquid in the container seized from Petitioner's cell contained a beverage that was "a darker uh (audible) red color." Hearing Transcript at 33, Pet'n Ex. E. The hearing officer then asked, "Lighter red?" to which Sergeant Foley responded, "I believe, yes sir." *Id*. The hearing officer then asked, "Was it clear?," to which Sergeant Foley responded, "Yes." *Id.* Sergeant Foley then testified that he had found alcohol before in a prison setting. *Id.*[2] Petitioner also contends that, "since the employee assistant indicated that documentary evidence did not exist prior to the hearing and Petitioner observed the employee assistant writing on the employee assistant form, the handwriting similarities suggests that the alcohol memo may

---

[2] The copy of the transcript of the hearing attached to the Petition as Exhibit E ends at page 33, which does not appear to be the end of the hearing. A copy of the transcript attached to Respondent's papers includes pages 33 through 61. Answer, Ex. Q, Sept. 30, 2013, ECF No. 9.

3

have been written after-the-fact by the employee assistant and not by the sergeant."
Pet'n Mem. of Law at 3, May 2, 2013, [ECF No. 2](ECF No. 2).

The hearing officer found Petitioner guilty of the charge and sentenced him to 50 days in SHU, and a loss of 45 days of good time credit. Petitioner appealed to the superintendent, who upheld the determination. Petitioner then collaterally attacked the determination through the New York Courts in an Article 78 proceeding. *See* N.Y. C.P.L.R. Art. 78. His Article 78 petition was denied, and that denial was affirmed by the New York State Supreme Court, Appellate Division, Fourth Department, in a written decision. *Melendez v. Berbary*, 89 A.D.3d 1524 (N.Y. App. Div. 4th Dept. 2011), *lv. denied*, 19 N.Y.3d 804 (2012). In its decision, the Fourth Department wrote:

> We reject petitioner's contention that the determination should be annulled on the ground that he received inadequate assistance from the employee assistant assigned to his case pursuant to 7 NYCRR 251-4.1. "[I]n order to succeed on his claim that the assistance was inadequate, petitioner must establish that prejudice resulted from the employee assistant's failure to comply with [7 NYCRR 251-4.2]" (*Matter of Serrano v Coughlin*, 152 AD2d 790, 543 NYS2d 571 [1989]; *see Matter of Rodriguez v Herbert*, 270 AD2d 889, 889-890, 706 NYS2d 284 [2000]). Pursuant thereto, the assistant may, inter alia, "assist the inmate in obtaining documentary evidence or written statements which may be necessary." (7 NYCRR 251-4.2.) Even assuming, arguendo, that the assistant could and should have obtained the documents requested by petitioner, we conclude that petitioner was not prejudiced thereby. At the hearing, the Hearing Officer provided petitioner with "all of the documents he requested, save those that did not exist or were irrelevant to the charged misbehavior" (*Matter of Parkinson v Selsky*, 49 AD3d 985, 986, 853 NYS2d 412 [2008]). Although petitioner asserts that he could have shown that the signature on one of the documents was forged if it had been provided to him sooner, there is no evidence to support his allegation of forgery.

*Matter of Melendez*, 89 A.D.3d at 1524–25.

**STANDARDS OF LAW**

The Court must review the petition pursuant to the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996) (codified at 28 U.S.C. § 2254(d)(1) (2000)). *Eze v. Senkowski*, 321 F.3d 110 (2d Cir. 2003). "Under AEDPA, a federal court shall issue a writ of habeas corpus if the state court adjudication 'resulted in a decision that was contrary to ... clearly established Federal law, as determined by the Supreme Court of the United States.' 28 U.S.C. § 2254(d)(1)." *Id*. at 122. An inmate confined in a special housing unit ("SHU"), or having been transferred to a different correctional facility from the one in which the disciplinary infraction took place, is entitled to "substantive assistance" from a correctional employee in preparing his defense, including obtaining evidence. *Eng v. Coughlin*, 858 F.2d 889, 898 (2d Cir. 1988). "Under *Eng*, an assigned assistant who does nothing to assist an inmate 'has failed to accord the prisoner his limited constitutional due process right of assistance.'" *Fernandez v. Callens*, No. 06-CV-506 (Sr), 2010 WL 4320362, 10 (W.D.N.Y. Oct. 29, 2010) (quoting *Eng*, 858 F.2d at 898).

A violation of a DOCCS Directive, however, does not arise to a violation of constitutional rights sufficient to support a civil rights claim under 42 U.S.C. § 1983. *See Holcomb v. Lykens,* 337 F.3d 217, 224 (2d Cir. 2013) (holding state prison directives do not create liberty interests protected by the Due Process Clause). In *Holcomb*, the Second Circuit held that,

> state statutes do not create federally protected due process entitlements to specific state-mandated procedures. "Elevating a state-mandated procedure to the status of a constitutionally protected liberty or property interest, would make process an end in itself rather than a requirement whose constitutional purpose is to protect a substantive interest in which the individual has a claim of entitlement." *Sealed v. Sealed*, 332 F.3d 51, 57 n.5 (2d Cir. 2003) (quoting *Olim*, 461 U.S. at 250-51, and *Doe v. Milwaukee*

*County*, 903 F.2d 499, 503 (7th Cir. 1990) (internal quotation marks omitted)).

*Holcomb v. Lykens*, 337 F.3d 217, 224 (2d Cir. 2003); *see also Nimmons v. Fischer*, No. 11-CV-817-A, 2013 WL 4495006, 10 (W.D.N.Y. Aug. 20, 2013) ("Violation of a DOCCS Directive does not arise to a violation of constitutional rights to support a § 1983 civil rights claim.").

## ANALYSIS

Here, Petitioner was evidently not provided with assistance in locating documentary evidence and interviewing witnesses for his defense. Although he did not receive advance copies of the memorandum from Sergeant Foley, or a page from Directive # 4910, both of which he had requested, he did review Sergeant Foley's memorandum at the hearing, and was able to question Sergeant Foley, Correctional Officer Karlstrom and inmate Moore. As the Second Circuit observed in *Pilgrim v. Luther*, 571 F.3d 201 (2d Cir. 2009):

> [W]e have held previously that a prisoner is entitled to assistance in "marshaling evidence and presenting a defense" in advance of a prison disciplinary hearing. *Eng v. Coughlin,* 858 F.2d 889, 897 (2d Cir.1988), and that the assistance must be provided "in good faith and the best interests of the inmate," *id.* at 898. However, any violations of this qualified right are reviewed for "harmless error." *See Powell v. Coughlin,* 953 F.2d 744, 750 (2d Cir.1991). In this case, although defendant Vaughn—who was assigned to assist plaintiff in preparing a defense for his disciplinary hearing—failed to comply with plaintiff's instructions on interviewing witnesses and gathering documents, any error on Vaughn's part was harmless in light of defendant's failure to identify any relevant testimony that was excluded as a result, his decision not to call witnesses when given the opportunity, and his decision to walk out of the hearing in protest of defendant Smith's role as the hearing officer.

*Pilgrim*, 571 F.3d at 206. The situation in the present case is similar to the one presented to the Second Circuit in *Pilgrim*, but here, unlike *Pilgrim*, Petitioner was able to question the witnesses he asked his employee assistant to obtain, and was able to review

6

the document he requested. Petitioner has not identified any prejudice outside of his claim that he could have shown a forgery given additional time to study Sergeant Foley's memorandum. The Fourth Department rightly rejected his claim, as the evidence presented does not reveal any convincing evidence of a forgery.

## CONCLUSION

Inmate Michael Melendez's Petition for a writ of habeas corpus, pursuant to 42 U.S.C. § 2254, is denied. Because Petitioner has not made a substantial showing of the denial of a constitutional right, the Court will not issue a certificate of appealability. 28 U.S.C. § 2253. Further, The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this Decision and Order would not be taken in good faith, and leave to appeal to the Court of Appeals as a poor person is hereby denied. *Coppedge v. United States*, 369 U.S. 438 (1962). Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

DATED:	October 9, 2013
	Rochester, New York

	/s/ Charles J. Siragusa
	CHARLES J. SIRAGUSA
	United States District Judge